(Superior Court of Cincinnati.)

Special Term, 1897.

W. M. AMPT ON BEHALF OF THE CITY OF CINCINNATI v. THE CITY OF CINCINNATI AND D. W. BROWN, AUDITOR.

---

1. In on action brought by a tax-payer under sec. 1778, Rev. Stats., to enjoin illegal actions of the officers of a municipal corporation, it is not necessary that it should be stated in the caption of the petition that the plaintiff is a taxpayer.

2. The provisions of the statutes which require in cities of the first grade of the first class that before any expenditures are made for each fiscal year, there shall be an estimate made by the auditor, the board of legislation and the board of supervisors, and subsequently semi-annual appropriations by the board of legislation for the several objects for which the city has to provide apportioned to each month of the moneys known to be in the treasury or estimated to come into it, are mandatory, and unless complied with, the city authorities will be enjoined at the instance of a tax-payer from the expenditure of the city's funds.

3. The appropriations above referred to must be detailed, specific and explicit for the several objects for which the city has provided apportioned to each month; and in every case in which it is practicable must classify and sub-divide the expenditures for any particular object; and if such classification and subdivision are not observed in the appropriating ordinance the same will be null and void.

4. Where the estimate as to any particular object has been agreed upon by the officers and boards whose duty it is to make such estimate the amount of such expenditure cannot be increased by means of the appropriating ordinance; and an attempt to expend an amount above the estimate is illegal.

5. The main purpose of the legislation upon this subject was to secure an economical expenditure of the public funds, for those objects only which a wise and prudent foresight would deem necessary; and to this end to compel city officials in advance of expenditures to make public declarations of the amounts and objects for which they proposed to make expenditures, so that public attention and criticism might be directed to the same. Such being the purpose of the statutes the courts should give them a liberal construction in the interest of the public.

---

SMITH, J.

The questions presented by this case arise by a demurrer to the petition. While the petition is of considerable length, yet as the discussion of the question of law in the case requires that most of the facts alleged in the petition should be borne constantly in mind, I set out the petition in full omitting those allegations of the same which are merely argumentative and rhetorical. It is as follows:

PETITION.

W. M. Ampt, the plaintiff, says he is a tax-payer and citizen of the city of Cincinnati, a municipal corporation of the first grade and the first class under the laws of Ohio, of which D. W. Brown defendant, is the auditor and he brings this suit on behalf of said city having first on the 5th day of June, 1897, requested Fred. Hertenstein Esq., the corporation counsel of said city in writing to do so and he having on said day refused to do so.

Plaintiff says that on May 17th, 1897 the said city by its board of legislation, passed an ordinance No. 15 making appropriations for the wants of said city for the last fiscal half year, ending December 31, 1897, and as required by R. S. 2690. h. of the Ohio Statutes, and thereby made appropriations from the several funds hereinafter named and in the manner hereinafter stated in the following causes of action.

FIRST CAUSE.

Said ordinance apporpriates from the Water Works Fund for the last half year of

1897, for water works purposes expendable,

in July, .................... $102,500.
in August .................... 75,000.
in September ............... 75,000.
in October .................. 66,000.
in November ............... 66,000.
in December ............... 40,500.

in all for said six months ........ $425,000.
but without any explicit, specific or detailed statement of the objects, uses and purposes to be provided for, or of the items of expense to be incurred under said appropriation, other than the words, "for water works purposes."

Plaintiff further says that on July 25th, 1896, the board of administration of said city, being *ex officio* in charge of its water works made an estimate of the needs of said department for 1897, in the following words, to-wit:
"WaterWorks Fund ............... $875,000.
but without any further explanation or statement whatever; and afterward there was appropriated by said city, "for water works purposes" for the first fiscal half year of 1897, the sum of $450,000.00 making with the appropriaton for the last half year of 1897 as above set forth, $875,000.00 appropriation for 1897.

Plaintiff says that it is the intention of said board of administration as *ex officio* trustees of said Water Works, to expend said $425,000.00 during the half year ending December 31, 1897, and without any other authority than the appropriation above set forth, and for the following general purposes, to-wit:

For maintaining and operating said works.

For repairs of said works.

For betterments and improvements of same.

For interest on Water Works bonded debt.

For principal of Water Works bonded debt.

For payment of floating debt.

Plaintiff says that on thus expending the $425,000.00 there will be paid out approximately the following sums, to-wit:
For wages and labor ............ $190,000.00
For salaries and office expenses ... 24,000.00
For materials and supplies ....... 130,000.00
For water works debts ............ 65,000.00
For sundries and contingencies .... 16,000.00

## SECOND CAUSE.

Said ordinance appropriates from the Trunk Sewer Fund for the last half year of 1897, expendable

in July .................... $25,000.
in August ................... 15,000.
in September ............... 10,000.
in October ................. 8,010.
in November ................ 3,000.
in December ................ 2,000.

in all for said six months ........ $63,010.00
but without any explicit, specific or detailed statement of the objects, uses and purposes

to be provided for, or of the items of expense to be incurred under said appropriation other than the words:
"for the construction of trunk sewers."

Plaintiff says that the estimate of the board of administration of July 25, 1896, of the needs of said city for the year 1897 for Trunk Sewers was made in the following words and not otherwise, to-wit:
"Trunk Sewers: Seven-tenths of one mill fixed by statute. (See act of general assembly passed March 25, 1896)." but without any other or further explanation or statement whatever, and afterward there was appropriated by said city "for the construction of trunk sewers" for the first fiscal half year of 1897 the sum of $75,000 making with the appropriation for the last half year of 1897, as above set forth, $138,010.00 appropriated for 1897, although no amount whatever was ever estimated for by said board, or any other officer, or authority of said city.

Plaintiff says that it is the intention of said board of administration to expend said $63,010 during the half year ending December 31, 1897, and without any other authority than the appropriation above set forth, partly for the construction of trunk sewers and partly to pay the cost of sewers other than trunk sewers, where their cost exceeds the amount assessable upon private property, but plaintiff is unable to state how much of the $63,010 will be expended for each purpose.

Plaintiff says that in expending said $63,010 there will be paid approximately the following sums, to-wit:
For wages and labor ............. $15,000.
For materials and supplies ........ 4,000.
For sundries and contingencies .... 4,000
For sewer contractors ............ 40,000

## THIRD CAUSE.

Said ordinance appropriates from the Bridge Fund for the last half year of 1897 for bridge purposes expendable,

in July ................. $6,000.00
in August ............... 3,000.00
in September ........... 3,000.00
in October ............. 3,000.00
in November ........... 2,000.00
in December ............ 337.17

in all for said six months .... $17,337.17
but without any explicit, specific or detailed statement of the object, uses and purposes to be provided for, or of the items of expense to be incurred under said appropriation, other than the words: "for Salaries and other Expenses."

Plaintiff says that the only estimate of the needs of the city for bridges in the year of 1897, was that of July 25, 1896, by the board of administration and was in the following words and not otherwise, to-wit:
"Bridges
Maintenance, betterments, etc... $32,000.00
Interest and sinking fund ........ 6,166.66
(91 Ohio St., 462) .................."
without stating how much was needed for maintenance of bridges—nor how much for

betterment of bridges—nor how much was for purposes other than these two for which the $32,000.00 was estimated.

Plaintiff says that the entire Bridge Fund for the year 1897, will be...$39,415.06 that there was appropriated by said city from said fund for the first half year of 1897...........................$25,166.66 making with the appropriation for the last half year of 1897 as above set forth...........................$42,503.83 appropriated for 1897 which is $4,337.17 in excess of the estimate for bridge purposes for the year 1897, and is $3,088.77 in excess of the Bridge Fund for said year.

Plaintiff says that it is the intention of said city by its board of administration to expend said $17,337.17 during the half year ending December 31, 1897, under the estimate and appropriation above set forth. In part for maintenance of bridges—in part for betterment of bridges—in part for the repair of bridges, but how much for each purpose he is unable to say.

Plaintiff says that in expending said $17,337.17 there will be paid approximately the following sums, to-wit:

For wages and labor..............$8,000.00
For material and supplies......... 3,600.00
For sundries and
   Contingencies.................. 700.00
For Repairs under
   Contract...................... 5000.00

### FOURTH CAUSE.

Said ordinance appropriates from the Wharfage Fund for the last half of the year, 1897, expendable

in July.....................$750.00
in August................... 430.00
in September ............... 400.00
in October.................. 428.00
in November................. 320.00
in December................. 320.00

in all for said six months......$2648.00 but without any explicit, specific or detailed statement of the objects, uses and purposes to be provided for, or of the items of expense to be incurred under said appropriation, other than the words: "for Salaries and other Expenses."

Plaintiff says that no estimate whatever was ever made or transmitted to the auditor, of the needs of the city for wharf purpose for 1897, and that it is the intention of said city through its wharf-master to expend said $2,648.00 during the half year ending December 31, 1897, under the appropriation above set forth for the following purposes, and for the following approximate amounts.

For salaries....................$1300.00
For wages....................... 525.00
For rents....................... 185.00
For sprinkling public landing... 320.00
For sundries.................... 300.00

Plaintiff says that all of said funds will be expended as above set forth upon the warrant of said auditor and during the last half of 1897 unless restrained by the order of this court.

Plaintiff says that in 1895, the city of Cincinnati, excluding the school board, paid out for wages and salaries $2,125,626.79, of which $892,783.83 was paid out by one board alone; that in 1896 similar amounts were paid out and in 1897 it is intended to pay a like sum for the same purpose.

Plaintiff says that the making of contracts and expenditures under appropriating ordinances passed in the form herein complained of, will be in violation of R. S. 2690 e— 2690 F. p. 5— 2690 h. — 2690 j.— 2698. 2699 and 1693 of the Ohio Laws and will be a misapplication of the funds of the city and an abuse of the city's corporate powers within the meaning of R. S. 1777; and that there is no remedy for the evils herein complained of to be hoped for from any voluntary action of the city's officials, who make, pass and revise appropriating ordinances, but that the only available remedy is by an injunction of its court as prayed for in this petition.

Plaintiff under Rev. Sat. 5099 annexes hereto interrogatories pertinent to the issues herein to be answered by the persons and officers there designated, under oath.

Whereupon the plaintiff prays the court to perpetually enjoin the making of any contracts or expenditures under the ordinance referred to in the petition, from the Water Works Fund; from the Trunk Sewer Fund; from the Bridge Fund and from the Wharfage Fund.

And to find that the $42,503.83 appropriated for bridge purposes in 1897 is $4,337.17 in excess of the estimate for said year, and is $3,088.17 in excess of the amount that will be in said fund for said year and to enjoin the expenditure of any such excess.

And he prays for all relief and costs.

The demurrer to the petition is upon three grounds,—

First: That the plaintiff has not legal capacity to sue.

Second: That several causes of action are improperly joined: and

Third: That the petition does not state facts sufficient to constitute a cause of action.

In support of the first ground it is claimed that inasmuch as the action can only be brought by the plaintiff in his character as tax payer on behalf of the city, the caption should describe the plaintiff as tax-payer. It is true that under sec. 1778 no one but a tax-payer has the right to bring an action of this character, but the fact that the person instituting the action is a tax-payer need not be stated in the caption any more than any other fact necessary to enable him to bring the action. It is sufficient if the fact of his being a tax payer together with all other facts necessary to enable him to maintain the action be alleged in the body of the petition. The language of sec. 1778 seems to me decisive of the question. It provides that "it shall be lawful for such tax-payer to

institute suit for such purpose *in his own name*, on behalf of the corporation. The statute does not say "in his own name and as a tax-payer" but only says "in his own name." This suit has been brought in this manner and in the body of the petition are the necessary allegations as to previous demand upon the corporation counsel to bring the action and his refusal and the allegations that the plaintiff is a tax payer of the city of Cincinnati.

As to the objection that several causes of action are improperly joined it seems to me sufficient to say without dwelling upon the matter that inasmuch as all the causes of action are similar in character and arise out of the same transaction, viz., the passage of an appropriating ordinance that they fall within the spirit as well as the letter of section 5019 of the Revised Statutes which provides for the joinder of causes of action in the same case.

I come now to consider the third objection, viz., that the petition does not state facts sufficient to constitute a cause of action.

The discussion of this ground of demurrer requires a knowledge of the general plan provided by the statutes of the state for the raising and disbursement of the public revenue in cities of the first grade and the first class, and I therefore call attention first to such general plan.

The first requirement for the raising and disbursement of the revenue for any year is that on or before the first Monday in March in each year the authorities of all the city institutions, except the board of education, as well as every head of a department or office in the city for whose wants provision is to be made shall report to the comptroller the amount of money needed for their respective wants for the ensuing year, he estimates to be given for each month. The comptroller, board of legislation and the board of supervisors each in turn then revises such estimates, and if deemed proper reduces them "so as to prevent unnecessary expenditure and to bring them within fair limits to the other expenditures required by the city." (Sec. 2690-9.)

The comptroller having received the estimates of the various departments prepares his estimates of the amount required for the different funds and transmits the same to the board of legislation together with an estimated percentage of the amount deemed necessary to be levied in that year so as to provide sufficient funds for paying the expenses of the city for the ensuing fiscal year. (Sec. 2690-F.)

These estimates of expenditures together with the estimated percentage of levy having been considered and revised by the board of legislation are transmitted to the board of supervisors for action thereon who approve or disapprove the same as seems best to them. (Sec. 2690-G.)

But the making of the estimates and the determination and making of the levy for the year does not entitle the various depart-ments of the city government to expend the amounts fixed by the estimates. Before any expenditures can be made by any of the city departments the statute provides (Sec. 2690-h) that "the board of legislation shall make by the first week of each fiscal half year, detailed and specific appropriations for the several objects for which the city has to provide apportioned to each month of the moneys known to be in the treasury, or estimated to come into it during the six months next ensuing including in their estimate the next semi-annual December collection of taxes and all other sources of revenue and be careful to provide in their appropriations for every legitimate city expenditure and to apportion the means fairly and legally among such expenditures; and their action thereon they shall transmit to the board of supervisors for approval, amendment or rejection as they may determine. All expenditures within the following six months shall be made in accordance with and within said appropriations. Balances thereof, or credits remaining over at the end of the year shall then no longer be open for payment therefrom and shall be re-credited to the funds from which they were taken."

To provide against any unforseen emergency it is further provided in the section of which a part only has just been cited that there shall be semi-annually appropriated the sum of twenty-five thousand dollars.

The passage of the appropriating ordinance and its approval as required by sec. 2690-j is no mere idle ceremony. It is a vital condition precedent to the expenditure of any money or the creation of any liability by the city and is so declared in the section just referred to which reads as follows.

Sec. 2690-j: "No liability whatever shall be created against any city of the first grade of the first class and no expenditures shall be made for the same, except for school and educational purposes as provided for by the board of education therein *unless it be previously covered by an appropriation sanctioned* both by the board of supervisors and board of legislation and common council as above provided except from the contingent fund of twenty-five thousand dollars herein provided for. ..................."

Any attempt to create a liability against any such city contrary to the provisions of this act shall be null and void."

The contention of the plaintiff with reference to the appropriations for the Waterworks Fund and the Trunk Sewer Fund is that inasmuch as they simply appropriate a lump sum in each case, viz. for the Waterworks $875,000.00 and for the Trunk Sewer Fund $63,010.00 they violate that provision of the law (Sec. 2690-h) which requires that "detailed and specific appropriations for the several objects for which the city has to provide, apportioned to each month" shall be made in the appropriating ordinance.

It is contended on the other hand by the city that the mere enumeration of the various funds by their respective titles with the

amount appropriated for that particular fund is a compliance with the statutes and a sufficiently "detailed and specific appropriation" and that any more detailed appropriation would be impracticable and therefore must be presumed not to be within the legislative intent.

In aiming at the true construction of the language "detailed and specific appropriations" we are not at liberty to confine our consideration to the language of the act of which this is a part, but are compelled to read this language in connection with that of section 1693 in which it is provided that no "appropriation of money for any purpose shall be made except by an ordinance" and "that every ordinance appropriating money shall contain an *explicit statement* of the uses and purposes for which the appropriation is made."

We find therefore that the appropriation provided for in sec. 2690-H shall not only be "detailed and specific" but shall also be "explicit."

Can an appropriation of a lump sum of $875,000.00 for the Waterworks Department or of $63,010.00 for the Trunk Sewer Fund be said to be either a detailed specific or explicit appropriation of money. It seems to me that it cannot and therefore that such an appropriation is violative of the provision both of sec. 2690 and sec. 1693.

But this conclusion as to the proper interpretation of sec. 2690-h is not reached solely by an examination of the language of the section. A consideration of only one of the purposes which must have been in the mind of the legislature in the enactment of these provisions is sufficient to make inevitable the same conclusion. That purpose, in my opinion, undoubtedly was to furnish the public so far as it could practically be done, an itemized statement of the expenditures of the city government in every department, and at the same time a statement which could be quickly secured and readily understood. The construction of the statute which requires such a statement to precede any expenditure conduces to economy and honesty in public expenditures and has a wholesome and deterrent influence in preventing waste, extravagancy and dishonesty. A different construction invites and leads to an opposite result.

The objection that it is impossible to state in advance every detail of expenditure in every department of the city does not militate against the construction of the statute, which requries in most cases, if not in all, a statement more detailed and explicit than the naming of a lump sum. It is true the statute must be reasonably construed; but the fact that it is unreasonable to demand that every item of expense should be enumerated in advance does not make unreasonable a demand that at least there shall be a classification of the expenditures in each department.

For the reasons stated I am of the opinion that the allegations of the petition as to the appropriations for the Waterworks and Trunk Sewer Fund state good causes of action against the city and that as to them the demurrer should be overruled.

To illustrate the practicability of such a classification without intending to be understood as stating a complete classification, there would seem to be no reason why the Waterworks appropriation should not at least be divided into (1) Operating expenses: (2) Interest on Waterworks debt: (3) Interest on Sinking Fund debt: (4) Betterments: and no reason why the Trunk Sewer appropriation might not be subdivided at least into (1) districts: (2) payments of cost in excess of $2.00 per foot limit. In both the cases taken for illustration doubtless the classification should be more minute than I have made it for the purposes of illustration.

It further appears from the allegations of the petition that the illegal manner of making appropriations as to the Waterworks and Trunk Sewer Fund has also marked the appropriations from the Bridge and Wharf Fund: and that as to the Bridge Fund the appropriations for the fiscal year exceed the amount of the estimate for that year by $4,337.17.

As to these funds therefore the petition also states good causes of action.

The demurrer to the petition will be overruled, and as the city does not controvert the facts alleged in the petition an injunction as prayed for therein should issue against the city enjoining it from making any further expenditures from the Waterworks, Trunk Sewer, Bridge or Wharf funds.

As the plaintiff however has expressed a desire not to disturb the transactions of the city for the present fiscal year ending December 31, 1897, but seeks only to have declared the rule which shall govern the various city boards in the passage of the appropriating ordinances, he has consented in case the demurrer of the city is overruled that the order of injunction shall be suspended until said 31st of December, 1897. In case, however, of a continuance in the future in the illegal method of passing appropriation ordinances, upon application to this court, an order of injunction will be granted and the same continued in force without suspension.

Wm. M. Ampt, for plaintiff.

Ellis Guy Kinkead, Corporation Counsel for defendant.